**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**REX CARR,**

**Plaintiff,**

**v.**

**STEPHEN TILLERY, STEVEN KATZ,**
**and DOUGLAS R. SPRONG,**

**Defendants.**                                    **No. 07-cv-0314-DRH**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I.  Introduction, Procedural Background and Facts

Now before the Court is Defendants' motion to dismiss (Docs. 73 & 74). Specifically, Defendants argue that Carr's claims are barred by *res judicata* and that Carr has failed to state a valid RICO claim.  Obviously, Carr opposes the motion (Doc. 89).  Based on the pleadings and the case law, the Court grants the motion to dismiss.

The parties in this case have a long litigatious history that began after the dissolution of the former law-firm, Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz and Glass, LLC, ("CKT") in March 2003.  This current dispute, which Rex Carr filed as a racketeering case, is his latest lawsuit against his former law partners, Stephen Tillery, Steven Katz and Douglas Sprong, regarding the distribution of legal fees.

On April 25, 2007, Carr commenced this suit (Doc. 2). Shortly thereafter, Carr filed a First Amended Complaint before Defendants responded to the original complaint (Doc. 6). On August 6, 2007, Defendants filed a motion to dismiss and for sanctions pursuant to 28 U.S.C. § 1927 (Doc. 17). That same day, Defendants also filed a motion for judicial notice in support of motion to dismiss and for sanctions pursuant to 28 U.S.C. § 1927 (Doc. 19). Subsequently, Carr filed a motion for leave to file Second Amended Complaint Non-Compliant with Local Rule 15.1 on September 13, 2007 (Doc. 24). Thereafter, Carr filed his response to the motion to dismiss on October 5, 2007 (Doc. 37).

On November 18, 2007, Carr filed a motion for sanctions under Rule 11 of Federal Rules of Civil Procedure (Doc. 46) to which Defendants filed a response on November 16, 2007 (Doc. 46) and Carr filed a reply on November 26, 2007 (Doc. 50). Carr filed an additional motion for sanctions under Rule 11 of the Federal Rule of Civil Procedure on December 12, 2007 (Doc. 51); Defendants filed an opposition to that motion for sanctions on December 21, 2007 (Doc. 53) and Carr filed a reply on January 3, 2008 (Doc. 56). On January 14, 2008, the Court granted Defendants' motion to take judicial notice (Doc. 61). On February 4, 2008, the Court granted Carr's motion for leave to file a Second Amended Complaint (Doc. 63). That same day, Magistrate Judge Wilkerson allowed the parties to conduct limited discovery by the way of interrogatories and requests to admit (Doc. 64).

Thereafter, Carr filed a Second Amended Complaint (Doc. 65). On February 5, 2008, the Court denied as moot Defendants' motion to dismiss and for

sanctions pursuant to 28 U.S.C. § 1927 because Carr filed his Second Amended Complaint on February 4, 2008 (Doc. 66). On February 25, 2008, Defendants filed a motion to dismiss and for sanctions pursuant to 28 U.S.C. § 1927 (Doc. 73); a renewed motion to stay discovery and initial disclosures (Doc. 75) and a motion for hearing on the motion to stay discovery and motion to dismiss (Doc. 76). Carr responded to the motion to dismiss on March 28, 2008 (Doc. 89). On April 4, 2008, the Court granted Defendants' motion to stay discovery and initial disclosures (Doc. 92). On April 16, 2008, Carr, with leave of the Court, filed supplemental authority in opposition to the motion to dismiss (Doc. 96) and Defendants filed their reply memorandum on April 27, 2008 (Doc. 97).

On April 30, 2008, Carr filed a motion for leave to file sanctions under Rule 11 of the Federal Rules of Civil Procedure (Doc. 98). Defendants filed their opposition to that motion on May 2, 2008 (Doc. 99) and Carr filed a reply to that response on May 5, 2008 (Doc. 100). Thereafter on May 19, 2008, Carr filed another motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure (Doc. 101). Defendants filed an opposition to the motion on June 6, 2008 (Doc. 102). On June 13, 2008, Carr filed another motion regarding sanctions: this time he filed a motion to withdraw his motion for sanctions that he filed on May 19, 2008 (Doc. 109); Defendants filed a response to this motion on June 16, 2008 (Doc. 110) and Carr filed his reply on June 18, 2008 (Doc. 111). In the meantime, both parties filed supplemental authority/responses as to their positions regarding the pending motion to dismiss. (Docs. 103, 105, 107, 112, & 114). Just recently, Carr filed a motion

to lift the stay regarding discovery (Doc. 115) and Defendants filed a response (Doc. 117).

The Second Amended Complaint contains four counts: Counts One through Three are brought under the civil Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § § 1341, 1343, 1346, 1349, 1503, 1951, 1952, 2314, 2315, and 1962 (a), © and (d), and Count Four is an Illinois state law claim for civil conspiracy. Carr claims that Defendants, deprived him of property, business and honest services in CKT's pension fee cases through Defendants' pattern of racketeering activity. Carr seeks treble the amount of $20,196,248.00 in damages sustained to his business and property interests; treble the amount of consequential damages; prejudgment interest; and reasonable attorney fees on the RICO counts and $20,000,00.00 in compensatory damages and $20,000,000.00 in exemplary and punitive damages on the civil conspiracy count. Despite the Second Amended Complaint being 96 pages long, the gist of the Second Amended Complaint is that Defendants have and are stealing money from Carr each time that they use an allegedly fraudulent formula to distribute legal fees. In doing so, Defendants have conspired and schemed to steal and to extort money from Carr, thereby, violating the civil RICO statutes.

The Second Amended Complaint, inter alia, alleges the following. Paragraph 15 of the Second Amended Complaint states:

> The Dissolving Members of CKT, Carr, Tillery, Cates and Katz, entered into an agreement (Principles of Dissolution, Exhibit 4,) governing the winding-up of CKT, to be effective until the final Articles of Dissolution

were filed with the State of Illinois. The Dissolving Members agreed that upon collecting a fee from a CKT case that had been distributed to that member for handling by CKT, the handling member would pay that fee to CKT, which would receive and hold that fee and would act as disbursing agent, provide an accounting as to how the fee was to be allocated among the Dissolving Members under Section 4.4 of the Restrictive Agreement (Exhibit 2) and would within 48 hours, if no objection to its allocations was received, disburse the fee and costs to the Dissolving Members. If an objection to the proposed allocations was made, the Principles of Dissolution required that disbursement would be postponed and that CKT would not disburse the fee until the Dissolving Members reached an agreement on the allocations of the fee. A fiduciary and trust relationship existing, thereby, between CKT, Defendants, Cates, and Carr with CKT, as disbursing agent, holding the fee in trust for them.

(Doc. 65: ¶ 15, p. 5). The Second Amended Complaint further alleges:

"During said period of time CKT, received fees from Katz, the handling member to whom the cases had been distributed by CKT for handling, in the following amounts, from, respectively: Berger – $69,000,000; McClintock – $20,000,000; Cooper – $91,000,000; and Clevenger – $10,150,000. After disbursement of certain amounts to outside and referring counsel, CKT retained the net amount of $109,584,000.00 to be allocated and distributed by CKT, as disbursing agent, to the members of CKT.

(Doc. 65: ¶ 17, p. 6).

It also states:

Sometime after March 10, 2003, and continuing to the present time, in ongoing schemes and plans, Defendants conspired together to increase their shares of the fees by theft, fraud and/or extortion from CKT, Carr, Korein, and Cates. Defendants intended to do so by stealing fees directly from CKT, the disbursing agent; by taking from Carr, Korein and Cates their intangible right to Defendants' honest services; by misusing their fiduciary relationship in fraudulently manipulating the allocation of fees received and by making fraudulent representations to CKT, Carr, Korein and Cates and others relying upon such representations as truth and fact, including various courts in which the class action cases were being processed, through the use of the mail and wire and corrupt endeavors to influence the due administration of

justice; and, in addition in so far as Carr is concerned, financial exploitation of Carr by schemes to misappropriate his assets and resources, by schemes to violate the fiduciary relationship between them, by using his assets contrary to the law, by scheming to attempt to extort, and by schemes to extort, Carr's property rights in said fees and costs by the wrongful use of fear of economic harm and to use such funds obtained by fraud, attempted extortion and extortion in the operation of CKT and Korein Tillery, LLC, RICO enterprises, engaged in interstate commerce.

(Doc. 65: ¶ 22, ps. 7-8). It also alleges:

On February 4, 2004, Defendants fraudulently represented to CKT, through Lisa Waligorski, its agent, the Administrator/Bookkeeper of Korein Tillery, LLC, employed by CKT pursuant to the Principles of Dissolution to calculate and distribute fees received from handling members, that the Berger case retention date was September 21, 2000, and not May 24, 2000, and that the formula to be used to calculate and allocate the net Berger fee of $44,266,333.33 received by CKT, was not either the Redemption Agreement/Katz/Sprong Pension Fee Plan alone, or the Restrictive Agreement alone, but, was a mix of parts of the Redemption Agreement with parts of the Restrictive Agreement, such mix increasing the share of the Defendants by millions of dollars over the use of either the Redemption Agreement or the Restrictive Agreement alone. CKT and Waligorski accepted and relied upon those representations, used the fraudulent formula and the false case retention date and prepared a spread sheet, (Exhibit 9) reducing the shares to be distributed to Korein, Cates and Carr and increasing the shares of the fee to be paid to the Defendants. The fee share to be paid Korein was reduced from $2,207,066.00 to $1,790,993.59; the fee share to be paid to Cates was reduced from $7,053,221.00 to $4,519,509.61 and the Carr fee share was reduced from $8,755,874.00 to $5,610,522.45, as shown by Exhibit 10, prepared under paragraph 4.4 of the Restrictive Agreement. If calculated under the Redemption Agreement Katz/Sprong Pension Fee Plan, Carr's share would be $8,721,816.00 as shown by Exhibit 11. The mix of the Restrictive Agreement with the Redemption Agreement as used by Defendants in their spread sheet, however, would cause a reduction of over $3,000,000.00 in Carr's share, as compared to the use of either the Restrictive Agreement or the Redemption Agreement alone. The effect of falsely claiming that the case retention date was September 21, 2000 instead of May 24, 2000, was to increase the Katz share of the fee from 34% to 50%, or by $7,000,000.00, if the fee was subject to the

Redemption Agreement  The fraudulent spread sheet, Exhibit 9, using both the false case retention date and the improper mix of the two agreements was E-mailed by Waligorski and CKT from St. Louis, Missouri, to Rex Carr in East St. Louis, Illinois, and to Cates in Swansea, Illinois on February 4, 2004.  Korein and Cates relied upon the fraudulent spread sheet and accepted the allocations as true and correct without protest or objection.

(Doc. 65: ¶ 24, ps. 8-10).  Furthermore, paragraph 31 avers:

Katz and Tillery misrepresented the Berger case retention date and violated their duty to give honest services, breaching their fiduciary duty to Korein, Cates and Carr as part of their scheme, because the Redemption Agreement provided that in pension class cases with a case retention date after September 18, 2000, the Katz share of the Berger fee would increase from 34% to 50% and the Defendants would obtain more money ($7,000,000.00) from the Korein, Cates and Carr shares of the Berger fee, if the victims believed the lies and dishonest statements and agreed that the Berger case retention date was September 21, 2000.

(Doc. 65: ¶ 31, ps. 12-13).  Paragraph 33 further avers:

When Carr refused to agree to the September 21, 2000, date, and to the fraudulent formula used in the fee allocation, Tillery falsely asserted: (a) that Tillery, Katz and Cates (Katz' sister) could ratify the allocation to Katz; (b) could change the percentages of any fee to which a member was entitled to any percentage they wanted; © could allocate portions of fees any way they pleased; (d) that Carr had fraudulently dissolved CKT so as to prevent his percentage share of income from being reduced by Defendants; and, (e) that Carr had retired because he had produced only $841.25 in fees to the firm in the preceding eleven months since the dissolution; and, (f) that Carr's share of all fees, including his share of the Berger fee, would be reduced by 50%, if Carr did not agree to the use of the case retention date proposed by Katz and agree that the formula based upon a mix of the Redemption and Restrictive Agreements would be used to allocate his share of the fee in the Berger case and in the calculation of all future fees received in pension class cases.  The statements were made by Tillery to cause Carr to fear economic harm, if Tillery and the Defendants withheld Carr's share of fees based on the pretext of their fraudulent and false assertions in order to extort from him the agreement sought.

(Doc. 65: ¶ 33, ps. 13-14). Paragraph 39 alleges in part:

> The defendants claimed that the adoption of these resolutions by CKT, changed Carr's right to participate in full shares of the fees to be distributed by CKT, not only in Berger, but in all future cases and in income generated by CKT, all of which Defendants knew to be untrue, false and dishonest and, all of which resolutions Defendants knew were not authorized under the various partnership agreements and were not proper resolutions to be passed in winding up the affairs of a dissolved limited liability corporation, but were in fraud of Carr's rights in CKT and the income generated by CKT and an attempt to extort Carr's rights in said fees and in future fees by the wrongful use of fear of economic harm.... Tillery sought, thereby, to further Defendants' scheme to exploit Carr's obligations to others so as to extort from him agreement to the use of fraudulent formula and the false case retention date. The Defendants knew that their actions took from him his business and property rights in the property of CKT, misappropriated his assets and resources and right to future fees to be paid to CKT.

(Doc. 65: ¶ 39, ps. 18-19).

Further, the Second Amended Complaint alleges:

> Commencing on February 12, 2004, continuing until May 7, 2004, (after Carr consented to the execution of the Memorandum of Understanding described in paragraphs 70-73) Defendants, acting upon Tillery's threats, while distributing shares to the other members of CKT, withheld all of Carr's shares of the fees they received in non-pension cases: Ebmeyer, Lacy, Matthews, Kleffner, and Allen, and refused to distribute to Carr even his share of fees that he had himself produced shortly after the meeting from cases distributed to him, Goss and Gyger, fees that he had transmitted to CKT for disbursement after the February meeting.... This refusal of the Defendants to distribute to Carr his share of these fees was in violation of the Principles of Dissolution and the Restrictive Agreement and the withholding of Carr's share was another act in support of their scheme to extort from Carr his rightful share of the fees in the Berger case and his rightful share of the fees received in future from CKT pension class action cases, by the wrongful use of the fear of economic harm, and in violation of Carr's intangible right to their honest services.

(Doc. 65: ¶ 40, ps. 20-21).

Paragraph 69 states:

On April 24, 2004, Carr, faced with the possibility that Judge Byron, might accept Tillery's lies as truth and might enter orders reducing Carr's shares of fees by 50% with the prospect of years of appeal and litigation without income, since the defendants were withholding payment of all fees shares from Carr, not just the pension class action case fees, and causing Carr enormous economic harm, Carr met with Defendants for the purpose of negotiating a global settlement of the disputes.

(Doc. 65: ¶ 69, p. 38). Paragraph 70 states:

Defendants authorized Sprong to act for them he represented to Carr that: a) they would cause the fees in Berger, Miller, and BOC (McClintock) cases, and all other pension cases, to be calculated and re-distributed in accordance with the Restrictive Agreement, (Exhibit 2) without reference to the Redemption Agreement, and they would no longer use the mix of the Restrictive Agreement and the Redemption Agreement in the calculation of the pension case fees that had been used in allocating the Berger fee; that all such fees would be distributed in accordance with Principles of Dissolution, (Exhibit 4) and distribution would be postponed until agreement was reached; and in accordance withe the Sprong Non-Equity Agreement (Exhibit 3); b) they agreed that the Memorandum of Understanding, if executed, could be submitted to the Circuit Court of St. Clair County in the declaratory judgment action for resolution of all issues should some future dispute arise after the recalculations took place; c) Defendants admitted and acknowledged that Carr had not retired; d) Defendants admitted and acknowledged that Carr had fulfilled all of his obligations under the partnership agreements; and, e) Defendants represented that Sprong had originated the Miller case alone, not what the documents indicated, and was, thereby entitled to 12.5% of the fee in Miller vs Hutchins under the Associate Incentive Plan.

(Doc. 65: ¶ 70, ps. 38-39). Moreover, paragraph 72 alleges:

On April 24, 2004, based on these representations, under the fear of suffering additional economic harm if he did not receive the $3,500,000.00, admittedly due to him but being wrongfully withheld, and believing the truth of the representations, Carr entered into a Memorandum of Understanding (Exhibit 5) with Defendants, which included the agreements and admissions set out in paragraphs 70 and

71 above. Carr agreed to dismiss the two cases filed against Defendants in St. Clair County, the injunction action and the Miller action, and to withdraw the notices of Contractual lien served in various cases and agreed that Defendants could take the balance of the funds on file with the Federal Court clerk, including Carr's $1,682,000.00, pending recalculation. It was not the intent that the Declaratory Judgment action would be dismissed and a provision was inserted allowing that action to be used in the event of disagreement as to future calculations.

(Doc. 65: ¶ 72, p. 40).

In paragraph 73, Carr alleges:

The Defendants admitted by execution of the Memorandum of Understanding, that: (a) their statements in the Resolutions adopted by CKT on February 11, 2004; (b) the Tillery sworn written and testimonial statements just made in the Prather case before Judge Byron; © the statements of material fact made to the Circuit Court of St. Clair County in their Amended Declaratory Judgment complaint; and, (d) their statements to Judge Herndon of the U.S. District Court in the Berger action, were false, (Tillery confessing, thereby, to the commission of several acts of perjury, indictable offenses, Class 3 felonies under 720 ILCS 5.32-2. and that his actions were taken in order to financially to exploit Carr, a class 3 felony, under 720 ILCS 5/16-1.3)

(Doc. 65: ¶ 73, ps. 40-41).

In their motion to dismiss, Defendants argue that Carr's Second Amended Complaint should be dismissed on multiple grounds. First, Defendants argue that Carr's claims are barred by *res judicata*. Defendants maintain that the Illinois state court issued an order dismissing with prejudice Carr's claims and counterclaims which arose from the same group of operative facts as this suit; that order was affirmed on appeal and constitutes a "final judgment on the merits" for *res judicata* purposes. Further, Defendants maintain that pursuant to the Illinois "one

re-filing" rule, Carr's repeated voluntary dismissals of his state court actions, which also arise from the same group of operative facts as this suit, constitute additional "final judgments on the merits" for *res judicata* purposes. Second, Defendants contend that Carr's Second Amended Complaint does not state a valid claim under RICO.

In response to the motion to dismiss, Carr argues that in his Second Amended Complaint he has alleged different operative facts, different transactions and different causes of action than in any previous lawsuit. Specifically, Carr argues that "No fact previously adjudicated could possibly bar his claims here. The only fact previously adjudicated was that the Memorandum of Understanding (MOU) was enforceable to which Carr agrees. The final judgment favored Carr's RICO claim like a permanent injury diagnosis favors a personal injury plaintiff. The judgment simply cemented his business and property injuries caused by Defendants' RICO activity." (Doc. 89, p. 3).

Before addressing the merits of the motion to dismiss, the Court sets forth the prior litigation history. On February 24, 2004, Carr sued Katz and Tillery in the St. Clair County, Illinois Circuit Court seeking compensatory damages of $372,064.80 and punitive damages of $2,000,000.00. (Doc. 19-4; ***Carr v. Katz*, 04-L-116**). That one-count complaint alleges that Katz and Tillery fraudulently represented to Carr that Sprong was entitled to an "Associate Incentive Plan" share of fees of $777,396.50 in the case of *Miller v. Mitchell Hutchins Asset Management*. *Id*. It also alleges that Katz and Tillery breached their fiduciary duty to him. Two

days later, Carr filed another lawsuit against Tillery and Katz in the St. Clair County,

Illinois Circuit Court seeking $1,000,000.00 in damages, a permanent injunction and

full immediate and complete access to all files, documents and records associated

or connected with the case files distributed by CKT to Tillery and Katz. (Doc. 19-3;

***Carr v. Tillery, 04-CH-221***). That complaint alleges breach of fiduciary duty and

conspiracy to fraudulently represent to Carr Sprong's entitlement to an Associate

Incentive Plan; wrongfully deducted and paid to Korein Tillery, LCC a production

premium of $917,008.06; misrepresentation of Carr's entitlement to fees in *Berger*

*v. Xerox*; by approving resolutions of the dissolving firm regarding the *Berger*

origination date; by approving the illegal resolution regarding Carr's retirement; and

by instructing record keepers to deny Carr access to documents. *Id.*

Almost two months later on April 13, 2004, Carr filed an answer to an

amended complaint and a counterclaim against Tillery, Katz and Judy Cates seeking

declaratory judgment as to the following: that any resolutions taken on February 11,

2004 have no validity; that the production premium and Article V of the Katz Sprong

Pension Fee Plan of the Redemption Agreement ceased to control the division of fees

upon dissolution; that the distribution of the *Berger* fee is controlled by the

Restrictive Agreement; that Sprong is not entitled to an Associate Incentive Plan

payment in *Miller*; that Katz is not entitled to a production premium in *Miller*; and

that Carr is not retired and has fully complied with the provisions of the Restrictive

Agreement. (Doc. 19-5; ***Carr Korein Tillery, LLC. v. Carr, 04-MR-056***). On May

15, 2005, Carr filed an amended counterclaim against Tillery, Katz and Cates seeking declaratory judgment as to the following: that the resolutions taken on February 11, 2004 have no validity; that the distribution of the *Berger* fee is controlled by the Redemption Agreement, without reference to the Restrictive Agreement; that Sprong is not entitled to an Associate Incentive Plan payment in *Miller*; that the distribution of fee in *Dunn v. BOX* is controlled by the Redemption Agreement, without reference to the Restrictive Agreement; that Carr is not retired; that Carr is entitled to interest in all Doe cases; that Carr is allowed access to books and records; and that the Memorandum of Understanding has been rescinded and is not valid. *Id*.

On May 17, 2004, Carr filed a motion for voluntary dismissal in 04-CH-0221, which the St. Clair County Circuit Court granted and dismissed the case without prejudice that same day. (Doc. 19-7). Also on May 17, 2004, Carr filed a motion for voluntary dismissal in 04-L-0116, which the St. Clair County Circuit Court also granted and dismissed without prejudice that same day. (Doc. 19-8). Thereafter on June 10, 2004, Katz and Tillery filed a motion to set aside the voluntary dismissal in 04-CH-221 arguing that they had no notice of the order for voluntary dismissal being entered and therefore did not have an opportunity to respond to the motion . (Doc. 19-9). That same day, Katz and Tillery filed a similar motion to set aside the voluntary dismissal in 04-L-116. (Doc. 19-10).

On June 12, 2006, CKT, Tillery and Katz filed a motion to dismiss in 04-MR-056 arguing that the Memorandum of Understanding was a settlement

agreement encompassing not only 04-MR-056, but all other litigation between the parties, including the claims asserted in 04-L-116 and 04-CH-221. On September 26, 2006, the St. Clair County, Illinois Circuit Court entered an order finding that the Memorandum of Understanding was "valid and enforceable" and "ordered that all claims and counterclaims asserted in this cause and related St. Clair County [case] No.[s] 04-L-116 and 04-CH-221 [were] dismissed with prejudice." (*See* Doc. 59-2: ***Carr Korein Tillery, LLC v. Carr*, No. 5-06-0548 (Ill. App. December 27, 2007)**). Carr appealed the order dismissing 04-L-116 and 04-CH-221 with prejudice. *Id* On December 27, 2007, the Illinois Appellate Court for the Fifth District affirmed the St. Clair County, Illinois Circuit Court. ***Id***.

On March 21, 2007, Carr filed a complaint for declaratory judgment against Korein Tillery, LLC in the Circuit Court of Madison County, Illinois. (Doc. 19-12; ***Carr v. Korein Tillery*, 07-MR-187**). That complaint seeks declaratory judgment regarding the dispute over fees in the following cases, as well as future cases, under the Memorandum of Understanding: *Clutts v. Allstate*; *Prather v. Pfizer*, *Berger v. Xerox*; *Dunn v. BOX*; *Cooper v. IBM*; *Misukonis v. Shell Oil*, *Village of East Alton*; and *Miller v. Mitchell Hutchins*. *Id*. Also on March 21, 2007, Carr filed suit against Korein Tillery, LLC, IBM Personal Pension Plan and IBM Corporation in the Circuit Court of Madison County, Illinois (Doc. 19-13; ***Carr v. Korein Tillery, LLC*, 07-CH-332**). That complaint contains two Counts: one for an accounting and one in chancery for foreclosure of lien. *Id*. Carr alleges that Tillery,

Katz and Sprong conspired to defraud Carr out of his share of fees by changing the origination date of *Berger*; passing a resolution that Carr retired; passing a resolution that Carr violated the covenant of good faith; falsely claiming that Sprong originated *Miller*; fraudulently miscalculated Carr's share of fees in settled cases; and by inducing Carr to enter into the Memorandum of Understanding based on fraud. **Id.** The complaint seeks an accounting for fees in the following cases, and any other cases settled not mentioned in this list, under the parties' agreements: *Clutts v. Allstate*; *Prather v. Pfizer*, *Berger v. Xerox*; *Dunn v. BOX*; *Cooper v. IBM*; *Misukonis v. Shell Oil*, *Village of East Alton*; and *Miller v. Mitchell Hutchins*; and that Carr be paid his share of excess of $20,000,000.00. The complaint also seeks the Court to foreclose his lien based on the Restrictive Agreement in *Cooper v. IBM*. The complaint further alleges that the lien is not less than $7,656,000.00 or more than $16,776,000.00. *Id.*

Just twelve days later on April 2, 2007, Carr filed another lawsuit, against Korein Tillery, LLC, in the St. Clair County, Illinois Circuit Court. (Doc. 19-16; ***Carr v. Korein Tillery, LLC, 07-L-176***). That complaint is for breach of contract and alternatively for declaratory judgment. It alleges that Korein Tillery failed to distribute Carr's share of fees in *Cooper* in breach of the parties' agreements, including the Memorandum of Understanding, and in disregard of Korein Tillery's fiduciary obligations to Carr. It seeks damages in the amount of $10,000,000.00. Alternatively, Carr asks the Court to resolve the dispute over his share of the *Cooper* fee under the express terms of the Memorandum of

Understanding. *Id*. A week later, Carr filed another complaint against Tillery and the IBM Personal Pension Plan in the Madison County, Illinois Circuit Court for conspiracy. (Doc. 19-17; ***Carr v. Tillery, 07-L-328***). That complaint alleges that Tillery, Katz and Sprong conspired with IBM to defraud Carr of his shares by changing the origination date of *Berger*; passing a resolution that Carr retired; passing a resolution that Carr violated the covenant of good faith; fraudulently miscalculated Carr's share of fees in *Dunn v. BOX*; *Miller v. Hutchins*; *Berger v. Xerox*; *Prather v. Pfizer*; and *Cooper v. IBM*; inducing Carr to enter into the Memorandum of Understanding for the purpose of believing his share in the above cases would be recalculated; induced the Circuit Court of Madison County, Illinois to wrongfully take jurisdiction of the dispute in *Prather*; agreed with IBM to dishonor his lien; in concert with IBM, convinced Judge Murphy to dismiss his lien in *Cooper v. IBM*; caused IBM to pay the fee to Korein Tillery; caused Korein Tillery to miscalculate his share of *Cooper v. IBM* fee; caused Korein Tillery to distribute the *Cooper v. IBM* fee to other partners though his share was in dispute; caused Judge Gleeson to enter an order authorizing escrow though he had no jurisdiction to do so; caused $5,842,000 to be placed in a phony escrow account; caused Korein Tillery to refuse to distribute any monies to Carr; and refused Carr access to information. *Id*.

Thereafter on April 26, 2007, Carr filed a motion for voluntary dismissal in the 07-L-176 case, which was granted and dismissed without prejudice that same day. (Doc. 19-18). On May 1, 2007, Car filed a motion for voluntary

dismissal in the 07-L-328 case, which was also granted and dismissed without prejudice that same day. (Doc. 19-19). Two days later, the Madison County Circuit Court granted Carr's motions to dismiss voluntarily and dismissed without prejudice the 07-MR-187 case (Doc. 19-20) and the 07-CH-332 case (Doc. 19-21).

## II. **Motion to Dismiss**

**Rule 12(b)(6)** permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." **Fed.R.Civ.P. 8(a)(2)**. Motions to dismiss are intended only to test the legal sufficiency of the plaintiff's complaint, not to address the claims on their merits; summary judgment motions are the proper vehicles to consider legal arguments and evidence.

Last year, the Supreme Court determined that ***Conley's*** famous "no set of facts" phrase "has earned its retirement." ***Bell Atlantic Corp. v. Twombly*, – U.S. –, 127 S.Ct. 1955, 1969 (2007)**. According to the Supreme Court, the threshold pleading requirement of **Federal Rule of Civil Procedure 8** requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face" in order to survive a **Rule 12(b)(6)** motion to dismiss for failure to state a claim for which relief can be granted. ***Id.* at 974 (clarifying that a "heightened fact pleading of specifics" is not required)(emphasis added)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." **Id. at 1964-65 (alteration in original)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**. The plaintiff must plead factual allegations which show the right to relief exists beyond mere speculation by "rais[ing] a *reasonable expectation* that discovery will reveal evidence" to substantiate the plaintiff's claims. **Id. at 1965 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'")(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)(emphasis added))**.

Further, when deciding a motion to dismiss, a court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. **Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998); Gen Elec. Capital Corp v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997)**. Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper. **Menominee, 161 F.3d at 456**.

### III.  Analysis

"Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." **Cole v. Bd. of Trs. of Univ. of Ill., 497 F.3d**

**770, 772 (7th Cir. 2007)(quoting *Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006); *Allen v. McCurry*, 449 U.S. 90, 94 (1990)**.  To determine whether a state court judgment should preclude a subsequent federal action, federal courts must give the judgment the same preclusive effect as that state would give it.  ***Allen*, 449 U.S. at 96; *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003)**.

As to *res judicata*, the Seventh Circuit has stated:

> There are three requirements for res judicata: "(1) an identity of the parties or their privies: (2) an identity of the causes of action; and (3) a final judgment on the merits," *Id.*  "If these requirements are fulfilled, res judicata 'bars not only those issues which were actually decided in a prior suit, but also all other issues which have been raised in that action.'" *Id.* (citation omitted). There is identity of causes of action if the claim "emerges from the same core of operative facts that the earlier action." *Id.* (citation omitted).  "[T]wo claims are one for purposes of res judicata if they are based on the same or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)(citations omitted).  In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999).  Also, "[w]hile the legal elements of each claim may be different, the central factual issues are identical." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995).

**Cole, 497 F.3d at 772-773**.  "Simply put, the doctrine of *res judicata* provides, that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat

the claim or demand, but as to any other admissible matter which might have been offered for the purpose." **Highway J, 456 F.3d at 741 (quoting *Nevada v. United States*, 463 U.S. 110, 129-30 (1983))**.

Defendants contend that this action should be dismissed under the doctrine of *res judicata*. Defendants argue that the Illinois Court issued an order dismissing with prejudice Carr's claim and counterclaims which arose from the same group of operative facts as the case at bar; that order was affirmed on appeal and constitutes a "final judgment on the merits" for *res judicata* purposes barring Carr's current suit. Defendants also argue that pursuant to the Illinois "one re-filing" rule, Carr's voluntary dismissals of his state court actions, which also arise from the same group of operative facts as the present suit, constitute additional "final judgments on the merits" for *res judicata* purposes barring Carr's current suit. Carr counters that he has pled different facts, transactions, and causes of actions, not previously adjudicated and not barred by state procedural rule. Carr contends that Defendants continually and repeatedly stole, defrauded and extorted business and property interests from him. Carr further contends that under Defendants' theory he would be forever barred from filing any action seeking even a dollar from Defendants after his first "refiling." Carr argues that he filed separate claims for separate transactions for separate relief. The Court agrees with Defendants.

As stated previously, *res judicata* applies whenever (1) parties in the present suit were also parties, or were in privity with parties, in the previous suit; (2) there was a "final judgment on the merits" in the prior suit; and (3) plaintiff's claim

in the present suit arises from the same "group of operative facts" as the previous claim. **Cole, 497 F.3d at 772**. The Court turns to address these requirements.

First, as to identity or privity of the parties, Carr does not dispute that this element has been satisfied. Carr and Defendants Tillery and Katz were parties to the earlier state court actions (either named individually or named though the law firm Korein Tillery, LLC) and Sprong is in privity with Defendants Tillery and Katz based on the allegations contained in the prior suits (based on his association with both CKT and Korein Tillery, LLC). Clearly, this element is met.

Second, as to whether there was a "final judgment on the merits" of the prior suit, the Court finds that both the Illinois State court's judgment dismissing with prejudice Carr's claims and counterclaims in the 2004 suits and Carr's 2007 repeated filings and voluntary dismissals in both Madison County, Illinois Circuit Court and St. Clair County, Illinois Circuit Court constitute "final judgments on the merits" for *res judicata*. On September 29, 2006, the Illinois Court issued a judgment dismissing with prejudice Carr's claims in *Carr v. Tillery*, 04-CH-221, *Carr v. Katz*, 04-L-116 and the amended counterclaim in *Carr Korein Tillery, LLC v. Carr*, 04-MR-056. Carr appealed this dismissal, however, the judgment was affirmed by the Illinois Appellate Court and Carr did not appeal from that decision. Obviously, that decision is a "final judgment on the merits."

As to the 2007 cases filed and voluntarily dismissed in both Madison County and St. Clair County, the Court finds that 735 ILCS 5/13-217, the Illinois one-refiling rule, applies. As alleged in the case at bar, the facts and claims alleged

in those lawsuits arose from the same set facts, thus, the filing and voluntary dismissals constituted in "final judgments on the merits" under the Illinois one-refiling rule. The Seventh Circuit provided the following: "while the one-year grace period is a boon for plaintiffs, Illinois courts have consistently held that the section permits no more than one refiling within that period. *see id*. ("[section 13-217] was not intended to permit multiple refilings of the same action");... ***Evans v. Lederle Laboratories***, **167 F.3d 1106, 1110 (7th Cir. 1999)(citations omitted)**. "Regardless of the forum, Illinois permits a plaintiff just two bites at the apple." ***Id*. at 1112**.[1]

Lastly, as to whether the claims arise from the same group of operative facts, the Court concludes that this element also has been met. Clearly based on the allegations of Carr's previous lawsuits and the one at bar, the claims arise out of the same group of operative facts. The facts contained in the Second Amended Complaint and the previous lawsuits are related in time, origin and motivation. The Second Amended Complaint is based on the claim that money was stolen from him

---

[1]Further, the Seventh Circuit held:

Illinois courts have held that, for the purposes of § 13-217, a complaint is deemed to be refiled where it contains the same cause of action as defined by *res judicata* principles. *See D'Last Corp. v. Ugent*, 288 Ill.App.3d 216, 224 Ill.Dec. 30, 681 N.E.2d 12, 16, *app. denied*, 174 Ill.2d 558, 227 Ill.Dec. 3, 686 N.E.2d 1159 (1997). *Res judicata* bars a further suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief." *Rodgers v. St. Mary's Hosp.*, 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 621 (1992) (internal quotations and citations omitted).... Otherwise, a plaintiff could prolong litigation indefinitely merely by failing to join necessary defendants. *See Gendek*, 116 Ill.Dec. 230, 518 N.E.2d at 1053 ("[Section 13-217] was intended to serve as an aid to the diligent, not a refuge for the negligent."). ***Evans ex rel. Evans v. Lederle Laboratories***, **167 F.3d 1106, 1113 (7th Cir. 1999)(footnote omitted).**

each time Defendants used an allegedly fraudulent formula to distribute fees. While not worded exactly the same, Carr's allegations in the previous lawsuits center around the same premise – that Defendants' interpretation of the agreements amount to fraud; that Defendants manipulated the CKT bookkeeper; that the Memorandum of Understanding was induced through fraud; that Defendants conspired to defraud Carr and made many misrepresentations to Courts about the legal fees owed to Carr. These same allegations are present in the Second Amended Complaint.

Carr argues that his RICO action is not barred by *res judicata* because it was clear that the RICO pattern element was not ripe in February 2004 and that the Illinois one-refiling rule does not preclude his RICO claims because they are federal questions which a state Supreme Court rule could not operate to bar. The Court disagrees. The Second Amended Complaint reveals that on February 11, 2004, Carr was aware that Defendants adopted the resolutions that changed his rights to fees "not only in *Berger*, but in all future cases and income generated by CKT, all of which Defendants knew to be untrue, false and dishonest and, all of which resolutions Defendants knew were not authorized under the various partnership agreements and were not proper resolutions… but were in fraud of Carr's rights in CKT and the income generated by CKT and an attempt to extort Carr's rights in said fees and in future fees by the wrongful use of fear of economic harm." (Doc. 65: ¶ 39, ps. 18-19). Moreover, state courts have concurrent jurisdiction over civil RICO claims. **Tafflin v. Levitt, 493 U.S. 455 (1990)**. Thus, Carr could have brought his RICO claims against Defendants in any of the prior state

court actions: for sure these claims could have been brought in any of the four 2007 lawsuits he filed and voluntarily dismissed in the Illinois State Circuit Courts.

To summarize, the Court finds that Carr's claims are barred by *res judicata*. Carr has repeatedly brought claims in state court arising from the same group of operative facts as the claims alleged in this case. In the prior state court actions, Carr claimed entitlement to attorneys' fees pursuant to the same agreements between the parties – the Redemption Agreement, the Restrictive Agreement, the Principles of Dissolution, and the Memorandum of Understanding. Peppered throughout his state court complaints and counterclaims as well as in the Second Amended Complaint at bar are allegations of conspiracy and fraud by the Defendants in their interpretation/ distribution and the alleged failure to pay Carr the full amount of legal fees. The state court suits brought by Carr in 2004 resulted in dismissals with prejudice and thus final judgments on the merits. Further, Carr's voluntary dismissal of the state court suits he brought in 2007 also resulted in judgments on the merits pursuant to 735 ILCS 5/13-217, which bars more than one refiling of a dismissed claim. All of the requirements of *res judicata* are met: (1) the parties in the case at bar were also parties, or in privity with parties, in the previous suits; (2) there was a judgment on the merits in the prior suits; and (3) Carr's claims in the present suit arise from the same group of operative facts as his previous claims/suits. Thus, the Court dismisses with prejudice Carr's complaint.

## IV.  <u>Conclusion</u>

Accordingly, the Court **GRANTS** Defendants' motion to dismiss (Doc. 73).  The Court **DISMISSES with prejudice** Carr's cause of action.  Further, the Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same.  Lastly, the Court **DENIES** both parties' various motions for sanctions.

**IT IS SO ORDERED.**

Signed this 17th day of July, 2008.

/s/        *David R Herndon*

**Chief Judge**
**United States District Court**