## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**REX CARR,**

**Plaintiff,**

**vs.**

**STEPHEN TILLERY, STEVEN KATZ, and**
**DOUGLAS R. SPRONG,**

**Defendants.**                                                        **No. 07-314-DRH**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

## I. Introduction

This matter is before the Court on the motion to enforce the mandate of the United States Court of Appeals for the Seventh Circuit in this case brought by Defendants Stephen Tillery, Steven Katz, and Douglas R. Sprong (Doc. 147). The nature of the claims in this case and the procedural history of the case do not require extensive recitation here, as they have been set out in detail in earlier orders of both this Court and the Seventh Circuit Court of Appeals. In this case, Plaintiff Rex Carr, an attorney who formerly was a partner at the firm of Carr Korein Tillery, LLC ("CKT"), alleges that his onetime law partners at CKT have wrongfully withheld from him his proper share of the attorney's fees from cases belonging to CKT. *See Carr v. Tillery*, **591 F.3d 909, 912 (7th Cir. 2010);** *Carr v. Tillery*, **No. 07-cv-0314-DRH, 2008 WL 2782928, at *1 (S.D. Ill. July 17, 2008)**. Carr asserts a claim for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., together with a pendent state-law claim for conspiracy brought in the Court's

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  *See Carr*, **591 F.3d at 912;** *Carr*, **2008 WL 2782928, at \*2.**

This case is the eighth consecutive time that Carr has sought to litigate the issue of his share of attorney's fees from CKT cases in the seven years since Carr dissolved the firm.  *See Carr*, **591 F.3d at 913-14**.  In 2004 Carr brought two cases in Illinois state court alleging that he had been cheated out of fees from CKT cases, and asserted a claim to such fees by way of a state-court counterclaim in a third case.  *See Carr*, **2008 WL 2782928, at \*7**.  Carr's claims subsequently were dismissed with prejudice pursuant to a settlement between Carr and his former partners, and the dismissal was affirmed by the Appellate Court of Illinois.  *See id*. **at \*8**.  In 2007 Carr filed four new lawsuits in Illinois state court regarding his share of attorney's fees from CKT cases, followed by the filing of this case; thereafter Carr dismissed the four state-court cases, electing to proceed against his former partners solely in this case.  *See Carr*, **591 F.3d at 914; Doc. 148 at 2**.  Subsequently the Court granted a motion to dismiss this case for failure to state a claim upon which relief can be granted, holding that this case is claim-precluded as a result of Carr's previous state-court litigation regarding his fee interest in CKT cases, but denied a motion for sanctions against Carr under 28 U.S.C. § 1927.  *See Carr*, **2008 WL 2782928, at \*13**.  Carr appealed from the dismissal of the case, while Tillery, Katz, and Sprong cross-appealed from the denial of Section 1927 sanctions against Carr.  *See Carr*, **591 F.3d at 913**.  The Seventh Circuit Court of Appeals affirmed the dismissal of Carr's case, but remanded the case to this Court for reconsideration of the issue of whether sanctions should be imposed on Carr and, if so, what the nature of those sanctions should be.  *See id.* **at 921**.  Upon receipt of the mandate of the Seventh Circuit Court of Appeals in the appeal in this case, the Court directed the parties to submit briefing on the issue of sanctions.

*See* **Doc. 145**.  Tillery, Katz, and Sprong have moved for the Court to enforce the mandate by imposing monetary sanctions and an injunction on Carr.  Carr in turn has responded to Defendants' motion.  Briefing on the issue of sanctions is complete, and the matter of sanctions is ripe for decision.  Accordingly, the Court now rules as follows.

## I. Analysis

### A.    Monetary Sanctions

The Court turns first to the matter of whether monetary sanctions should be imposed on Carr and, if so, what the amount of such sanctions should be.  Under the familiar "American Rule," each party to a lawsuit ordinarily bears its own attorney's fees unless a statute, a contract, or decisional authority provides otherwise.  *See Alyeska Pipeline & Serv. Co. v. Wilderness Soc'y*, **421 U.S. 240, 247 (1975);** *Gaffney v. Riverboat Servs. of Ind., Inc.*, **451 F.3d 424, 466 (7th Cir. 2006);** *Osler Inst., Inc. v. Forde*, **386 F.3d 816, 818 (7th Cir. 2004)**.  One of the exceptions to the American Rule authorizes a federal court, on the basis of its general equity powers, to award counsel fees to a successful party where the party's opponent has acted in bad faith.  *See Hall v. Cole*, **412 U.S. 1, 4-5 (1973) ("[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require . . . . Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted . . . in bad faith, vexatiously, wantonly, or for oppressive reasons.");** *Skelton v. General Motors Corp.*, **860 F.2d 250, 252 (7th Cir. 1988) ("The American Rule continues to govern most of the cases in this country.  However, there are many cases where the court may determine not only the amount of fees but which party shall pay them, based on statutory requirements or equitable doctrines.")**.  The Supreme Court of the United States has held that the power to assess

sanctions for bad-faith litigation is one of the inherent or implied powers which federal courts must necessarily possess "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, **501 U.S. 32, 43 (1991)**. Importantly, the inherent power of a federal court can be invoked even if other procedural rules exist to sanction the same conduct. The Supreme Court has recognized that nothing in 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and any other statute or rule authorizing attorney's fees as a sanction, or in the cases that have interpreted such statutes and rules, "warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." *Id.* at 50. The Court added that "[t]his is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions." *Id*. However, the Court went on to say, "neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id*. "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees . . . . Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id*. **(citing** *Roadway Express, Inc. v. Piper*, **447 U.S. 752, 767 (1980))**. Nevertheless, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id*. Further, the decision to award attorney's fees pursuant to a federal court's inherent power as a sanction for bad-faith litigation is committed to the court's discretion. *See In re Generes*, **69 F.3d 821, 826 (7th Cir. 1995) (citing** *Chambers*, **501 U.S. at 50)**.

In this instance the Seventh Circuit Court of Appeals already has held that 28 U.S.C. § 1927 is not up to the task of sanctioning Carr because the statute "is inapplicable to 'misconduct that occurs before the case appears on the federal court's docket,' or in other words to 'improper conduct in the run up to litigation.'" **Carr, 591 F.3d at 919 (quoting *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006))**. Similarly, in situations where a party has "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [an opponent] to exhausted compliance" with the party's wishes such that the party's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court," Rule 11, which governs the submission of papers to a court for an improper purpose, cannot reach the offending conduct. **Chambers, 501 U.S. at 41, 51**. **See also *Dale M. v. Board of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 985-86 (7th Cir. 2002) (a district court has inherent power to order an attorney to disgorge a fee to which the attorney is not entitled, although such conduct is not sanctionable under Rule 11); *Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 772 (7th Cir. 1997) (a district court has inherent power to sanction an attorney for failing file certain documents, although such conduct is not sanctionable under Rule 11)**. What this means for this case, then, is that, if Carr is to be sanctioned, it must be pursuant to this Court's inherent power. Accordingly, to decide whether Carr is to be sanctioned, the Court must determine if he has engaged in bad-faith litigation in this case. **See *Corley v. Rosewood Care Ctr., Inc*., 142 F.3d 1041, 1058 (7th Cir. 1998) (citing *Gillette Foods Inc. v. Bayernwald-Fruchteverwertung, GmbH*, 977 F.2d 809, 813-14 (3d Cir. 1992)) (noting that the "prerequisite to a sanction under the inherent power is a finding of bad faith[.]")**.

In determining whether this litigation was pursued by Carr in bad faith, the Court is guided by the view expressed by the Seventh Circuit Court of Appeals on this issue. On appeal, the reviewing court found that, although Carr's RICO claim was not "utterly" frivolous so as to fail to come within federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the case nonetheless was frivolous and "so lacking in merit (most clearly because of [claim preclusion]) that its pursuit by the plaintiff indicates a motive to harass." *Carr*, **591 F.3d at 920**. Elsewhere in the decision the court observed that "the RICO claim has no merit" and that it was "very weak," "feeble," "desperate," "a complete non-starter," and "groundless." *Id.* **at 916, 917, 918, 919, 920**. As additional evidence of Carr's bad faith, the Seventh Circuit Court of Appeals noted: the "vitriolic" tone of Carr's submissions to this Court and the reviewing court; Carr's "false" statements to the reviewing court about whether he intended to try to re-litigate in federal court matters already settled in the course of Carr's state-court litigation against his former law partners at CKT; Carr's "disingenuous" attempts to distinguish controlling case law showing that his claims in this case are precluded by the state-court litigation; Carr's attempts to raise new arguments on appeal by way of a reply brief; and Carr's failure to offer any rebuttal to the cross-appeal against him regarding sanctions. *Id.* **at 920**. The Seventh Circuit Court of Appeals noted also that it had sanctioned Carr in the past for bringing a frivolous appeal in a suit against his old partners and termed this suit (and the ensuing appeal) "an abuse of the patience of the courts." *Id.* Indeed, the reviewing court took the unusual step of chastising Carr's attorneys for assisting him to pursue this frivolous case, stating that Carr "is out of control and his lawyers are neglecting their duties as officers of the state and federal courts by failing to rein him in." *Id*. On that note, the Seventh Circuit Court of Appeals remanded the case to this Court for reconsideration of the issue of sanctions.

This Court concurs in the opinion of the Seventh Circuit Court of Appeals as to whether Carr pursued this case in bad faith.  It is simply a fact that Carr elected to pursue this case, and an appeal from the dismissal thereof, in the teeth of precedent showing that his claims in this case concerning matters addressed in the 2004 state-court lawsuits between Carr and his former partners are barred by res judicata and that his claims concerning matters that were raised in the 2007 state-court lawsuits between Carr and his ex-partners are barred by the so-called "one-refiling" rule, a principle of Illinois law whereby a party who voluntarily dismisses a suit is allowed to re-file that suit only once (not four times, as Carr believes).  *See Eskridge v. Cook County*, **577 F.3d 806, 808 (7th Cir. 2009) (citing 735 ILCS 5/13-217);** *Schrager v. Grossman*, **752 N.E.2d 1, 4 (Ill. App. Ct. 2000)**.  Significantly, even in the wake of the reviewing court's decision in this case, Carr continues to insist that his legal position on the issue of claim preclusion both by res judicata and the one-refiling rule was well-founded.  Carr's submissions to the Court have been uniquely vituperative indeed and if the tone of his most recent, post-appeal filing is somewhat chastened and less bellicose than usual, it is worth noting that, despite the complete rejection of his racketeering claims against Tillery, Katz, and Sprong by this Court and the Seventh Circuit Court of Appeals, Carr continues to accuse his former partners of fraud and claims that as a result of their machinations to deprive him of his rightful share of attorney's fees from CKT cases he is unable to pay any monetary sanction in this case.  It does not appear that Carr learned anything to speak of from being sanctioned approximately $23,000 by the Seventh Circuit Court of Appeals for, as noted, bringing a frivolous appeal against his former law partners; the sanctions order was cited by Carr as an example of his ex-partners' racketeering activity in his pleadings in this case, a position that the reviewing court termed "wild[ ]."  *Carr*, **591 F.3d at 920**.  It appears

further that Carr has not learned anything from this case either, as he currently is pursuing yet another lawsuit, filed last year in state court in Missouri, against his ex-partners based on the same claims held to be barred by preclusion in this case.

In light of the foregoing facts, the Court has little difficulty concluding that Carr has prosecuted this action in bad faith.  Generally speaking, bad faith is found where a party has brought a claim or is litigating a claim that has no basis in the law and, in other words, is meritless, and the party's motivation to do so is a malign purpose, such as delay or harassment of an opponent. ***See McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 201-02 (7th Cir. 1983)**.  Here there is no serious question that Carr's claims in this case are precluded by res judicata and the one-refiling rule and that Carr had no reasonable basis for supposing that they were not so precluded, giving rise to an inference that this suit was brought by Carr for the purpose of harassing his former law partners. ***See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987) (citing *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1328 (7th Cir. 1986)) (imposing sanctions on counsel who failed to acknowledge adverse authority on appeal:  "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.")**.  Thus, the next issue for resolution by the Court is that of an appropriate sanction to be imposed on Carr in this case.  The Court believes that a proper sanction is an award of attorney's fees to be paid by Carr to the prevailing parties in this case.  As the Seventh Circuit Court of Appeals has instructed, "an award of attorney's fees is proper . . . where the losing party has been guilty of bad faith, as by bringing a frivolous suit – frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win." ***Coyne-Delany Co.v. Capital Dev. Bd. of Ill.*, 717 F.2d 385, 390 (7th Cir. 1983)**.

The decision to grant an award of attorney's fees as a sanction pursuant to a federal court's inherent power is committed to the court's discretion, as already has been noted, as also is the amount of such an award. *See Dal Pozzo v. Basic Mach. Co.*, **463 F.3d 609, 614 (7th Cir. 2006);** *Indianapolis Colts v. Mayor & City Council of Baltimore*, **775 F.2d 177, 181 (7th Cir. 1985);** *Gieringer v. Silverman*, **731 F.2d 1272, 1281 (7th Cir. 1984)**. However, it also bears repeating, a federal court's discretion in fashioning sanctions pursuant to its inherent powers is to be employed cautiously. "Because these inherent powers are potent, they must be exercised with caution and restraint." *Schmude v. Sheahan*, **420 F.3d 645, 650 (7th Cir. 2005).** *See also Methode Elecs., Inc. v. Adam Techs., Inc.*, **371 F.3d 923, 927 (7th Cir. 2004) (quoting** *Kovilic*, **106 F.3d at 772) ("[T]here is a 'need to be cautious when resorting to inherent powers to justify an action[.]'");** *United States for Use & Benefit of Treat Bros. Co. v. Fidelity & Deposit Co. of Md.*, **986 F.2d 1110, 1120 (7th Cir. 1993) ("[T]he imposition of sanctions, including attorneys' fees, on the basis of the court's inherent power is to be undertaken with great circumspection")**. The Court reiterates these points because, while it believes that Tillery, Katz, and Sprong are entitled to an award of attorney's fees in this case, the Court believes also that the amount of fees requested by Defendants, $1,439,913.71, is excessive, and must be reduced.

As an initial matter, the Court notes that $16,180.91 of the legal bills submitted to the Court by Tillery, Katz, and Sprong consists of bills for services performed for Defendants by the law firm of Jenner & Block, LLP ("Jenner & Block"), on an appeal taken by Carr in 2007 in a separate case. As already has been noted, Carr was sanctioned by the Seventh Circuit Court of Appeals in that case and ordered to pay approximately $23,000 in costs, including attorney's fees,

incurred by the prevailing parties in defending the appeal.  *See Cooper v. IBM Pers. Pension Plan*, **240 Fed. Appx. 133, 136 (7th Cir. 2007)**.  Thus, as Carr points out, Tillery, Katz, and Sprong are not entitled to collect for a second time their attorney's fees incurred in the 2007 appeal, and accordingly the Court will disallow as recoverable attorney's fees in this matter the $16,180.91 in legal bills paid to Jenner & Block for services during the 2007 appeal.  With respect to legal bills for services rendered to Tillery, Katz, and Sprong in the appeal in this case, the Court likewise concludes that these should be disallowed.  Tillery, Katz, and Sprong never requested an award of attorney's fees from the Seventh Circuit Court of Appeals while this case was on appeal.  Thus, consistent with the settled principle that an issue not raised on appeal is waived in later proceedings in the same case, the Court considers the issue of attorney's fees incurred by Defendants during the recent appeal in this case to be waived.  *See United States v. Camou*, **184 U.S. 572, 574 (1902)** (**[I]t is the settled law . . . that, after a case has been brought [on appeal] and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate.");** *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, **171 F.3d 1083, 1088 (7th Cir. 1999) (a failure to raise an issue on appeal leads to waiver of that issue in later proceedings in the same case following remand); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478.6 (2d ed. 2002) ("[A] question that could have been but was not raised on one appeal cannot be resurrected . . . later . . . in the same case.") (footnote omitted) (collecting cases)**.  Thus, the Court disallows as part of an award of attorney's fees in this case $258,809.81 in legal bills paid by Tillery, Katz, and Sprong to Jenner & Block for services rendered to Defendants on the appeal in this case.

For the same reason the Court disallows as recoverable attorney's fees sums paid by Tillery, Katz, and Sprong to Jenner & Block for legal services on the appeal in this case, the Court also disallows $185,763.70 paid by Defendants to attorney Robert Sprague for what is denominated in the billing records submitted to the Court simply as "appeal."  **Doc. 147-4 at 78**.  A separate payment by Tillery, Katz, and Sprong to Sprague in the amount of $150,000 also is disallowed, as absolutely no reason for the expenditure is proffered. ***See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (the burden is on the party seeking an award of attorney's fees to substantiate the hours worked and the rate claimed); *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) (noting that when "a fee petition is vague or inadequately documented," a court "may . . . strike . . . problematic entries.")**.  Likewise disallowed are $19,779.18 in legal bills paid by Tillery, Katz, and Sprong to Blitz, Bardgett & Deutsch, L.C. ("Blitz, Bardgett").  The expenses were incurred in an entirely separate case brought by Carr against his former law partners in state court in Missouri.  Quite apart from the fact that most of the expenses were incurred in a frivolous attempt by Blitz, Bardgett to remove the case to federal court, it is this Court's view that a request for reimbursement of legal expenses for defending that case is most properly directed to the state court where the case is pending.

The Court turns finally to the $780,157.23 in legal expenses incurred by Tillery, Katz, and Sprong for legal services rendered in this Court by Dickstein, Shapiro, LLP ("Dickstein, Shapiro"), a law firm based in Washington, D.C.  As Defendants note, in cases in which attorney's fees are sought pursuant to an indemnity agreement, the amount of fees actually paid is presumptively reasonable. ***See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999)**.  However, this is not such a case.  Also, part of the rationale underlying

*Medcom* is that where attorney's fees have actually been paid, the element of "moral hazard" is lacking: "The fees in dispute . . . are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself." ***Id*. at 520-21**.  In this case, however, the element of moral hazard was present, as Tillery, Katz, and Sprong sought recovery of their legal expenses in this Court pursuant to 28 U.S.C. § 1927 and appealed from the Court's denial of recovery of such expenses.  Under these circumstances, the Court declines to accord a presumption of reasonableness to the sums paid by Tillery, Katz, and Sprong to Dickstein, Shapiro.  Having reviewed the billings from Dickstein, Shapiro carefully, the Court believes that they reflect an appropriate use of the time of partners, associates, and paralegals.  However, the Court does not find to be reasonable the hourly billing rates charged by Dickstein, Shapiro in this case, which ran between $510 and $750 per hour for partners, between $360 and $435 per hour for associates, and between $140 and $240 per hour for paralegals.[1]

The Court believes that a reasonable alternative to Dickstein, Shapiro's excessive bills is the so-called "*Laffey* Matrix."  ***See Laffey v. Northwest Airlines, Inc*., 572 F. Supp. 354, 371-72 (D.D.C. 1983)**.  The *Laffey* Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. area prepared by the Civil Division of the United States Attorney's Office for the District of Columbia.   It is available online at http://www.justice.gov/usao/dc/Divisions/Civil_Division.  The *Laffey* Matrix is based on two variables:  the year in which the litigation occurred and the number of years an attorney has

---

1.    Specifically, Dickstein, Shapiro's bills to Tillery, Katz, and Sprong reflect that the latter were billed between $140 and $240 per hour for "Research Srv," which the Court takes to be in the nature of research service performed by a paralegal.  The bills also reflect charges for paralegal services at a rate of between $180 and $240 per hour.

practiced law.  To determine the appropriate rate for an attorney's services using the *Laffey* Matrix, one simply locates the intersection of the row that represents the attorney's number of years in practice and the column that represents the year in which the litigation occurred.  The cell at the intersection represents the reasonable rate for that attorney's services in the Washington, D.C. area. The *Laffey* Matrix commonly is used to calculate hourly rates in statutory fee-shifting cases, but it also is used to calculate the "lodestar" hourly rate for attorney's fees in class action litigation.  ***See, e.g., In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, MDL Docket No. 1350, 2009 WL 4799954, at \*19 (N.D. Ill. Dec. 9, 2009) (citing *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883, 2008 WL 5478576, at \*\*6-8 (N.D. Cal. Dec. 31, 2008)**.

In this instance the Court will calculate the attorney's fees Carr must pay using the *Laffey* Matrix and information obtained from Dickstein, Shapiro's Internet website, which the Court can judicially notice.  ***See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)**.  The Court concludes that the three Dickstein, Shapiro partners who worked on this case (Adam Proujansky, Barry W. Levine, and Lawrence Garr) are entitled to bill at the rate of $440 per hour for work performed on the case between June 4, 2007, the date of Dickstein, Shapiro's earliest bill in this case, and May 31, 2008.  Work performed on the case by Proujansky, Levine, and Garr between May 31, 2008, and September 16, 2008, the date of Dickstein, Shapiro's last bill in this case, can be billed at the rate of $465 per hour.  Work performed on the case by Dickstein, Shapiro associate Ann-Marie Luciano between June 4, 2007, and May 31, 2008, can be billed at the rate of $315 per hour; work performed on the case by Luciano between May 31, 2008, and September 16, 2008, can be billed at the rate of $330 per hour.  Finally, paralegal services performed on the case between

June 4, 2007, and May 31, 2008, can be billed at the rate of $125 per hour; paralegal work performed on the case between May 31, 2008, and September 16, 2008, can be billed at the rate of $130 per hour.  Having recalculated Dickstein, Shapiro's billings in accordance with the foregoing rates, the Court finds that the total of such billings is $635,171.23.  This, then, is the amount Carr must pay to Tillery, Katz, and Sprong as a sanction.[2]

### B.    Antisuit Injunction

Having determined the amount of attorney's fees that Carr must pay as a sanction, the Court turns next to the issue of whether Carr should be enjoined from bringing any further lawsuits against his former CKT partners based on the claims that this Court and the Seventh Circuit Court of Appeals found to be precluded by res judicata and the one-refiling rule in this case.  In its opinion in this case the Seventh Circuit Court of Appeals specifically directed this Court to consider the propriety of an antisuit injunction, stating that, on remand,

> The district court should also consider whether to enjoin Carr from conducting further litigation arising from actions by the defendants of which he has complained in his voluminous filings to date.  Such injunctions, which complement the award of monetary sanctions for vexatious litigation, are standard remedies for misconduct in litigation.  The unlikelihood, in view of the history of Carr's litigation with the defendants, that he will accept defeat gracefully suggests that the remedy may be needed in this case.

*Carr*, 591 F.3d at 920-21 (citations omitted).  The Court's authority to issue such an injunction lies in the All Writs Act, which provides, in relevant part, "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The power of a federal court to issue

---

2.    Per Carr's request, the amount of the sanction can be offset against the approximately $6 million that Carr's former partners have escrowed for him as Carr's share of the attorney's fees from CKT cases pending when the firm was dissolved.

injunctions is limited by the Anti-Injunction Act, which states:  "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." **28 U.S.C. § 2283**.  Therefore, "[f]ederal courts cannot enjoin state-court proceedings unless the intervention is authorized expressly by federal statute or falls under one of [the] two other exceptions to the Anti-Injunction Act." *McFarland v. Scott*, **512 U.S. 849, 857 (1994)**.  The Anti-Injunction Act rests on the "fundamental constitutional independence of the States and their courts," and its purpose is to make the dual system of state and federal courts work without "'needless friction.'" *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, **398 U.S. 281, 286-87 (1970) (quoting** *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, **309 U.S. 4, 9 (1940))**.  The decision to grant or deny an injunction is committed to a court's discretion.  *See We Care Hair Dev., Inc. v. Engen*, **180 F.3d 838, 844 (7th Cir. 1999);** *Commonwealth Edison Co. v. Gulf Oil Corp.*, **541 F.2d 1263, 1274 (7th Cir. 1976)**.

At issue here is the authority of this Court under 28 U.S.C. § 2283 to enter an injunction "to protect or effectuate its judgments," the so-called "re-litigation exception" to the Anti-Injunction Act that specifically permits federal courts to enjoin a state court's re-litigation of a matter previously determined by the federal court. *See Zurich Am. Ins. Co. v. Superior Court for Cal.*, **326 F.3d 816, 825 n.6 (7th Cir. 2003);** *Martin v. Akerson*, **No. 08 C 3812, 2009 WL 2848897, at \*3 (N.D. Ill. Aug. 31, 2009);** *Glenayre Elecs., Inc. v. Jackson*, **No. 02 CV 0256, 2007 WL 2492105, at \*2 (N.D. Ill. Aug. 30, 2007);** *Mahurkar v. C.R. Bard, Inc.*, **209 F. Supp. 2d 911, 913 & n.1 (N.D. Ill. 2002)**.  *See also In re VMS Sec. Litig.*, **103 F.3d 1317, 1323 (7th Cir. 1996) (quoting** *United States v. New York Tel. Co.*, **434 U.S. 159, 172 (1977)) (noting**

a federal court's power to use the All Writs Act "in order 'to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'").  The re-litigation exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). *See also Harper Plastics v. Amoco Chems. Corp.*, 657 F.2d 939, 947 (7th Cir. 1981) ("[T]he relitigation principle . . . means simply that a federal court may enjoin a state proceeding under the doctrine of res judicata."). *Accord Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 720-21 (5th Cir. 1990) ("[T]he relitigation exception grew out of res judicata and collateral estoppel concerns, and was aimed at preventing the costly and judicially wasteful redetermination of issues in state court.")*.  With these principles in mind, the Court turns to consideration of the question of whether the issuance of an injunction is appropriate in this case pursuant to the All Writs Act and the re-litigation exception to the Anti-Injunction Act.

Specifically in dispute here is whether the Court should enter an injunction to protect and effectuate its judgment that Carr's claims in this case are precluded by res judicata and the one-refiling rule by prohibiting Carr from attempting to re-litigate those claims in other proceedings, most notably a pending suit for an accounting that Carr filed in Missouri state court last year against CKT and Korein, Tillery, LLC ("Korein, Tillery"), the law firm of which Tillery, Katz, and Sprong currently are principals.  As noted, this issue hinges on whether the claims in the Missouri case are precluded by the judgment in this case.  The preclusive effect of a federal court judgment depends on federal law.  *See Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) (the Court "has the

last word on the claim-preclusive effect of *all* federal judgments") (emphasis in original); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003) ("The preclusive effect of a judgment rendered by a federal court depends on national rather than state law.")**.**  In general, of course, the doctrine of claim preclusion, also known as res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *See also Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) **(res judicata or claim preclusion prohibits parties from re-litigating issues that were decided or could have been raised in a previous lawsuit);** *Wade v. Hopper*, 993 F.2d 1246, 1252 **(7th Cir. 1993) (same)**.  For res judicata or claim preclusion to apply, three elements must be present:  first, a final judgment on the merits in an earlier action; second, identity of parties or privies in the two lawsuits; and third, identity of the cause of action between the two lawsuits. *See Highway J Citizens Group v. United States Dep't of Transp.*, 456 F.3d 734, 741 **(7th Cir. 2006);** *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993); *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987).

The Court can judicially notice various legal documents that are before it pertaining to Carr's Missouri action, including the complaint in the Missouri action, a brief filed by Carr in that action in response to Korein, Tillery's motion to dismiss the case as being claim-precluded by the judgment in this case, and a brief filed by Carr in an appeal from an order entered by an Illinois state court enjoining the Missouri action. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 **(7th Cir. 2000);** *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)**.**  It is apparent from the foregoing documents that the

Missouri action is Carr's ninth attempt to litigate the matter of his fee interest in CKT cases that were pending when the firm was dissolved.  Although as Carr points out, Tillery, Katz, and Sprong are not parties to the Missouri action, this is of no consequence because as members of CKT and/or Korein, Tillery, Tillery, Katz, and Sprong are privies of those entities.  *See Kramer v. Stelter*, **588 F. Supp. 2d 862, 867 (N.D. Ill. 2008) (a member of a limited liability company ("LLC") is in privity with the LLC);** *Direct Mktg. Concepts, Inc. v. Trudeau*, **266 F. Supp. 2d 794, 796 (N.D. Ill. 2003) (same).**  Also, the mere fact that Carr has chosen to frame his latest bid for attorney's fees as an action for an accounting rather than for damages does not permit the Missouri action to escape claim preclusion.  Because, as noted, claim preclusion bars re-litigation of matters that should have been raised in an earlier proceeding, a litigant may not "frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation."  *Car Carriers, Inc. v. Ford Motor Co.*, **789 F.2d 589, 594 (7th Cir. 1986)**.  Having determined that the Missouri action is precluded by the judgment in this case, the Court will address next to the issue of whether an injunction against the Missouri action and any other suits by Carr based on the claims in this case should issue.

A party seeking a permanent injunction pursuant to the All Writs Act must make the showing necessary for issuance of any permanent injunction.  *See, e.g., In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, **738 F.2d 209, 212-13 (7th Cir. 1984)**.  In the Seventh Circuit, a party seeking a permanent injunction must demonstrate:  it has succeeded on the merits; no adequate remedy at law exists; the moving party will suffer irreparable harm without injunctive relief; the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and the injunction will not harm the public interest.  *See*

*Old Republic Ins. Co. v. Employers Reinsurance Corp*., **144 F.3d 1077, 1081 (7th Cir. 1998);**
*Plummer v. American Inst. of Certified Pub. Accountants*, **97 F.3d 220, 229 (7th Cir. 1996)**.
However, the Seventh Circuit Court of Appeals has held also that a party seeking to justify entry of
a permanent injunction is "not required . . . to show irreparable injury . . . . Although it is a necessary
element for a temporary restraining order or a preliminary injunction, 'irreparable injury is not an
independent requirement for obtaining a permanent injunction; it is only one basis for showing the
inadequacy of the legal remedy.'" *Crane v. Indiana High Sch. Athletic Ass'n*, **975 F.2d 1315, 1326
(7th Cir. 1992) (quoting** *Jennings Water, Inc. v. City of N. Vernon, Ind.*, **895 F.2d 311, 318 n.6
(7th Cir. 1989))**.  Therefore, a showing of irreparable harm in the absence of injunctive relief should
be viewed as a method for a party seeking a permanent injunction to demonstrate the lack of an
adequate legal remedy.  This understanding comports with the notion that it is critical for a party
seeking an injunction to protect the preclusive effect of a federal judgment to "satisfy the general
equitable requirement that the 'legal' remedy by defensive assertion of res judicata be found
inadequate."   **18 Wright, Miller & Cooper, Federal Practice & Procedure § 4405
(collecting cases)**.

        Under the circumstances of this case, the Court is satisfied that Tillery, Katz, and
Sprong do not have an adequate remedy at law through, for example, the defensive assertion of
claim preclusion in Carr's Missouri action or any other actions that Carr might file concerning the
claims at issue in this case, given Carr's penchant for the promiscuous filing of lawsuits against his
former partners at CKT.  As noted, in 2004 Carr filed two separate and identical lawsuits against his
ex-partners concerning fees from CKT cases, together with a counterclaim asserting the same right
to attorney's fees.  When the parties reached a settlement agreement, the ink was not yet dry on the

agreement when Carr repudiated it, claiming that the settlement (which Carr had drafted himself) was procured by fraud. It took an appeal to the Illinois Appellate Court finally to establish the validity of the settlement. In the meantime, Carr filed four new state-court cases and this case alleging that his ex-partners had breached the settlement agreement. Throughout the course of Carr's seven years of litigation against his former law partners Carr has dramatically shifted his litigation positions without warning or explanation according to whatever he perceives as his advantage at a given time, and he has refused to acknowledge rulings adverse to him as anything but the product of treachery by his ex-partners. Moreover, despite the drubbing he received in this Court and in the Seventh Circuit Court of Appeals, he continues to insist on his right to sue his ex-partners over the same stale claims that were laid to rest in this case.

The Court is mindful of the concerns of comity and federalism implicated by an injunction limiting Carr's ability to file suits against his ex-partners in state court. *See Atlantic Coast Line R.R.*, 398 U.S. at 297 ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."); *Dunn v. Carey*, 808 F.2d 555, 558-59 (7th Cir. 1986) (to the extent that there is doubt in the application of the Anti-Injunction Act, a federal court should err on the side of nonintervention in state-court proceedings); *Ahrensfeld v. Stephens*, 528 F.2d 193, 198 (7th Cir. 1975) ("The discretion possessed by the district courts to interfere with state court proceedings . . . should be exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings."). However, it is apparent to the Court that if Carr is not enjoined from re-litigating the claims asserted in this case in new lawsuits against his former partners, he will simply

keep filing suit on those claims; as the Seventh Circuit Court of Appeals noted, Carr is "out of control[.]" ***Carr*, 591 F.3d at 920**.

Of the many unpleasant tasks a federal district judge is called upon to perform, disciplining the attorneys who practice before him or her is among the most disagreeable, but the time has come to bring Carr back under control. In this instance considerations of comity and federalism actually weigh in favor of an injunction against further suits on the claims asserted in this case, because only such an injunction, enforceable through the Court's contempt power, will put an end to the campaign of vexatious and harassing litigation against his ex-partners that Carr has waged in the state courts and in this Court. ***See Orlando Residence, Ltd. v. GP Credit Co., LLC*, 553 F.3d 550, 558-59 (7th Cir. 2009) (remanding a case with instructions to the district court to enter an injunction or "bill of peace" to prevent the defendants from engaging in further legal maneuvering to avoid paying judgments against them); *Samuel C. Ennis & Co. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir. 1976) (quoting *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 144 (1941) (Reed, J., dissenting)) (noting that the purpose of the re-litigation exception to the Anti-Injunction Act is to enable a federal court to bring an end to litigation, thus avoiding the waste of time and judicial resources entailed in requiring a state court that is "unfamiliar with the record already made . . . to determine whether the issues were or were not settled by the [federal] adjudication."). *Accord Castro v. United States*, 775 F.2d 399, 408-10 (1st Cir. 1985) (an antisuit injunction was proper where, absent such an injunction, the plaintiffs, if they lost, would "simply refile their claim and repeat the same process all over again"); *Browning Debenture Holders' Comm. v. DASA Corp.*, 605 F.2d 35, 39-40 (2d Cir. 1978) (holding that an antisuit injunction was properly granted pursuant to the re-litigation**

exception to the Anti-Injunction Act; failure to grant such an injunction would have been a "disservice" to the state courts that would be saddled with vexatious and repetitive litigation on the same claims "for years to come"); 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4405 ("Res judicata injunctions are most easily justified to protect against a clear demonstration that vexatious, multiplicitous, and harassing litigation of the same claim has not been deterred effectively by ordinary methods of defensive pleading. Some of the cases show appalling patterns of abuse by repetitive litigants that compel whatever protection may be afforded by injunction and ensuing contempt proceedings.") (collecting cases). *Cf. Ramsden v. AgriBank, FCB*, 214 F.3d 865, 870-71 (7th Cir. 2000) (noting that "the expenses and uncertainty of litigation may sometimes be sufficient to warrant an injunction pursuant to § 2283" before a state court has ruled on the issue of whether a prior federal judgment is preclusive as to the case before the state court).

The Court's conclusion that Carr should be enjoined from attempts to re-litigate the claims in this case also is supported by an examination of certain additional factors that courts consider in determining whether to enjoin vexatious litigants. Those factors are: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *See Orlando Residence Ltd. v. GP Credit Co., LLC*, 609 F. Supp. 2d 813, 817 (E.D. Wis. 2009) (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). *See also*

*Molski v. Mandarin Touch Rest.*, **347 F. Supp. 2d 860, 863-67 (C.D. Cal. 2004) (applying the *Safir* factors in determining that a vexatious litigant should be barred from filing further lawsuits without leave of court)**.  In this instance Carr has an extensive history of litigation against his former CKT partners that includes nine separate assertions of legal claims to attorney's fees from CKT cases in seven years.  The sheer volume of cases, many of them duplicative, demonstrates in the Court's view that Carr's motive in filing the cases has been to harass his ex-partners and to coerce them to accede in his demand for additional fees by raising the same claims repeatedly in new fora.  Concerning whether Carr was represented by counsel, in this Court Carr has been represented by his son, Bruce Carr, an attorney, who also represented Carr in the appeal in this case alongside attorneys from Kirkland & Ellis, LLP.  Thus, Carr is not entitled to the solicitude normally accorded to pro se litigants, a solicitude the Court would not extend to Carr in any event given that he is himself an accomplished attorney of long standing who ought to know better than to conduct himself as he has done.  As to whether Carr has caused needless expense and unnecessary burden to courts and parties, it is apparent that he has; one need only consider the sizeable award of attorney's fees levied against Carr by the Court in the preceding section of this Order.  Finally, given that the previous imposition of a substantial monetary sanction on Carr by the Seventh Circuit Court of Appeals has not curbed Carr's behavior and in fact he is continuing to try to litigate the claims held to be precluded in this case in state court in Missouri, the Court concludes that the only adequate measure to prevent further vexatious litigation by Carr is an injunction.

An injunction imposing pre-filing restrictions on a vexatious litigant is a fairly routine sanction in the Seventh Circuit.  ***See, e.g., McCready v. eBay, Inc.*, 453 F.3d 882, 892-93 (7th Cir. 2006) (ordering a vexatious pro se litigant to show cause why he should not be barred**

Page 23 of  26

from filing papers in the federal courts of the Seventh Circuit for a period of at least two years); *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186-87 (7th Cir. 1995) (imposing a two-year prohibition of new filings in the federal courts of this Circuit on a vexatious litigant). "Courts have ample authority to curb abusive filing practices by imposing a range of restrictions. A filing restriction must, however, be narrowly tailored to the type of abuse, and must not bar the courthouse door absolutely." *Chapman v. Executive Comm. of U.S. Dist. Ct. for N. Dist. of Ill.*, 324 Fed. Appx. 500, 502 (7th Cir. 2009) (citations omitted). The Seventh Circuit Court of Appeals has identified certain limitations courts should observe in imposing filing restrictions. First, such an order should not be drawn so broadly as to prohibit an appeal from the order or to hinder the party that is the subject of the order in defending against lawsuits. *See In re City of Chicago*, 500 F.3d 582, 584 (7th Cir. 2007) (imposing filing restrictions on a vexatious litigant but stating that "exceptions to this filing bar are made for criminal cases and for applications for writs of habeas corpus"); *In re Chapman*, 328 F.3d 903, 905-06 (7th Cir. 2003) (affirming an order imposing pre-filing restrictions on a vexatious litigant that did not affect the litigant's ability to defend civil and criminal cases and the litigant's access to appellate review). Also, filing restrictions should not operate as a perpetual bar to the courthouse door. *See Chapman*, 324 Fed. Appx. at 502 (quoting *Mack*, 45 F.3d at 186) ("[P]erpetual orders are generally a mistake[.]") (collecting cases); *Kelly v. Null*, Civil Nos. 07-339-GPM, 08-322-GPM, 2009 WL 4065040, at **3-4 (S.D. Ill. Nov. 23, 2009) (entering an order enjoining a vexatious litigant from filing new suits in the district court until such time as the litigant paid the clerk of the court a penalty of $200 and authorizing the litigant to seek to have the filing restriction lifted not sooner than two years from the date of entry of the order).

Under the circumstances of this case, the Court believes that an appropriate injunction is one that bars Carr from pursuing any legal claim in any forum, federal or state, regarding the claims raised in this case and that requires Carr to submit any papers that he proposes to file in any forum concerning CKT, Korein, Tillery, and the members and employees of CKT and Korein, Tillery to the undersigned Chief Judge so that the undersigned can determine whether the claims presented in such papers are new or if they are in fact merely duplicative of matters already fully litigated in this case. If the latter, the papers will be returned to Carr with directions not to file them. Obviously, Carr will be required to dismiss his action against CKT and Korein, Tillery currently pending in Missouri state court; equally obviously, if Carr files papers that the Court has determined are merely an attempt to re-litigate the claims held to be barred by res judicata and the one-refiling rule in this case, Carr will be subject to penalties for contempt. Conversely, if after the Court's preliminary review of papers sought to be filed by Carr the Court determines that the papers assert genuinely new legal claims that are not precluded by the judgment in this case, Carr will be given leave to file them. In the past the Seventh Circuit Court of Appeals has found "no flaw" in an order that "allow[s] for the threshold review of a litigant's documents to ensure that those documents are neither duplicative nor frivolous" and which "requires only that [the litigant'] future actions be original, an idea not inconsistent with res judicata, and his filings be nonfrivolous." ***In re Davis*, 878 F.2d 211, 212-13 (7th Cir. 1989). *See also Green v. Warden*, 699 F.2d 364, 370 (7th Cir. 1983) (requiring a vexatious litigant to submit all documents he proposed to file in federal court for pre-filing review by the court and requiring the litigant to certify that the claims presented are new claims that have not been decided on the merits by any federal court)**. Accordingly, the Court will enter such an injunction in this case.

### III. Conclusion

The motion to enforce the mandate of the Seventh Circuit Court of Appeals brought by Tillery, Katz, and Sprong (Doc. 147) is **GRANTED**.  Carr is **ORDERED** to pay to Tillery, Katz, and Sprong the sum of $635,171.23 as a sanction for litigating in bad faith. It is **further ORDERED** that Carr and anyone acting on his behalf is **ENJOINED** from pursuing any litigation whatever regarding the subject matter of this litigation, and from filing any action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, charge or any similar instrument against CKT and Korein, Tillery and their present, former, or future agents, representatives, members, employees, directors, officers, attorneys, parents, assigns, predecessors or successors, in any court, forum, tribunal, self-regulatory organization, or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees whether for pecuniary advantage or otherwise, without first obtaining leave of this Court.  Exempt from this restriction are:  a notice of appeal from this Order and any papers sought to be filed by Carr in a civil or criminal case to which Carr is a party defendant.

**IT IS SO ORDERED.**

Signed this 30th day of March, 2010.

/s/   *David R Herndon*

**Chief Judge**
**United States District Court**